IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| LINDA WATKINS-DILLON, on her own behalf and on behalf of her minor daughter, BRITNEY DILLON, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 08 C 3640 |
| v. | ) ) | Judge Gettleman |
| CITY OF CHICAGO, et al., | ) ) | Magistrate Judge Ashman |
| Defendants. | ) ) | JURY TRIAL DEMANDED |

### MOTION FOR ENTRY OF A PROTECTIVE ORDER

Now come Plaintiffs, by and through their attorneys, LOEVY & LOEVY, and respectfully requests that this Court enter Plaintiffs' proposed protective order, attached hereto as Exhibit A. In support of their motion, Plaintiffs state as follows:

### Introduction

Plaintiffs have brought this action pursuant to 42 U.S.C § 1983 for redress of the deprivation of their constitutional rights. Plaintiff Linda Watkins-Dillon alleges that, on April 21, 2008, while she and her 14-year old daughter (and co-Plaintiff) Britney were dropping Linda's 4-year old son off at preschool, defendant officers arrested her for prostitution and domestic battery without probable cause. Ms. Watkins-Dillon further alleges that the defendant officers used excessive force against her and unlawfully searched her while taking her into custody. Thereafter, Ms. Watkins-Dillon alleges, the defendant officers handcuffed her to a pole in a room at the police station where she and Britney were held for several hours without

1

explanation. After they were released, Mr. Watkins-Dillon went to the emergency room where she was treated for injuries she incurred during the arrest. Neither Ms. Watkins-Dillon nor her daughter was charged with any crime.

Plaintiffs have requested a number of documents from Defendants, including the Defendant Officers' personnel files and allegations of misconduct that have been lodged against them. Defendants seek all of Plaintiffs' medical and mental health records without limitation, even though Ms. Watkins-Dillon's physical injuries are limited and she is not, at this time, claiming anything more than "garden variety" emotional distress.

The parties recently conferred to negotiate protective orders governing the production of any "Confidential Matter" and protected health information ("PHI"). The parties agree on a number of issues. Plaintiffs agree with Defendants that the following categories of documents should remain confidential: all personnel files, private financial information, complainants' identities, and officers' personal information. Plaintiffs dispute, however, Defendants' position that every page of every Complaint Register (C.R.) file[1] is confidential and that their medical records are subject to discovery without limitation.

## I. Redacted C.R. Files are Presumptively Public.

In a line of case law stretching back more than a decade, the Seventh Circuit takes very seriously the presumption that wherever possible, in this democratic system, judicial proceedings must be open and accessible to the citizenry. Time and again, the Seventh Circuit has cautioned district courts about the inappropriateness of overbroad protective orders that seal entire

---

[1] C.R. files are the product of investigations by the Chicago Police Internal Affairs Department or the City of Chicago Independent Police Review Authority (IPRA) into complaints against Chicago Police Officers.

categories of documents. Of the two protective orders proposed by the parties in this case, only Plaintiffs' proposal comports with the Seventh Circuit's precedents. The Defendants' proposal would create an inappropriate "blanket" seal over every last piece of paper bearing a "C.R." stamp, suppressing much material which is not even arguably confidential; it also improperly reverses the "good cause" burden, attempting to shift it away from the party seeking to maintain secrecy.

"The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record, or part of it." Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999) (protective orders cannot give parties "carte blanche to decide what portions of the record shall be kept secret"). In that regard, "[t]he Seventh Circuit has made clear that a trial judge must make an independent determination of good cause" -- "even if the parties submit an agreed protective order." Hollinger Int'l Inc. v. Hollinger, Inc., 2005 WL 317780, at *2 (N. D. Ill. Jan. 19, 2005). In the case at bar, the Defendants' proposed definition of "confidential matter" implicates the Court's responsibility to police overly broad protective orders.

**A. The Nature Of The Disagreement**

Plaintiffs propose that the Court enter a protective order under which Defendants may designate any document in a C.R. File as confidential, with Plaintiffs retaining the right to challenge any such designation via motion to the Court. Truly confidential information (social security numbers, home addresses, private financial data, telephone numbers, and the like, see Exhibit A, ¶ A(6)) would be subject to redaction, but there is no blanket presumption that every

3

page of every C.R. File is confidential. The Defendants, by contrast, propose that the Court should pre-emptively decide now (in advance) that any document which the City places into one of its C.R. files shall be automatically be deemed confidential.

Plaintiffs' approach makes more practical sense. The only thing this Court needs to order at this juncture is a workable mechanism for protecting these documents, and Plaintiffs' order provides that mechanism. If Defendants believe a given C.R. document is confidential, they can stamp it so, subject to challenge. Defendants' proposal, on the other hand, badly overreaches. Captured within the web of a presumptive designation created by the Defendants' protective order would be anything in a C.R. file, including many things that are not even arguably confidential, such as witness statements. A wholesale blanket designation by this Court of every document that happens to have an investigation number in the lower corner would not comport with Seventh Circuit precedent rejecting overbroad protective orders. The Seventh Circuit has repeatedly condemned overbroad designations of confidentiality because the work of the federal judicial system is "presumptively public business." Union Oil Co. of Cal. v. Leavell, 220 F.3d 562, 568 (7th Cir. 2000). Under the law, an *ex ante* overbroad blanket designation is thus improper, and should be rejected. In re Krynicki, 983 F.2d 74, 78 (7th Cir. 1992) (remanding for "a refined assessment of which information should remain confidential" because "the public has a common law right of access to judicial records, and privacy needs justification").

### B. The Applicable Case Law

#### 1. Under Settled Seventh Circuit Precedent, Pre-Trial Discovery Is Presumptively Open, Not Under Seal

"[P]re-trial discovery must take place in public unless compelling reasons exist for

4

denying the public access to the proceedings." Jepson, Inc. v. Makita Elec. Works, Ltd., 30 F.3d 854, 860 (7th Cir. 1994) (relying in part on "the abstract virtues of sunlight as a disinfectant"); Citizens First Nat'l Bank v. Cincinnati Ins. Co., 178 F.3d 943, 946 (7th Cir. 1999) ("[m]ost cases endorse a presumption of public access to discovery materials"); Grove Fresh Distributors, Inc. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994) (the "public's right of access to court proceedings and documents is well-established," citing multiple Supreme Court cases).

The Supreme Court teaches that "[p]ublic scrutiny over the court system" serves several important purposes: (1) to promote community respect for the rule of law, (2) to provide a check on the activities of judges and litigants, and (3) to foster more accurate fact finding. Richmond Newspapers, Inc., v. Virginia, 448 U.S. 555, 572 (1980). "Justified originally by common-law traditions predating the enactment of our Constitution, the right of access belonging to the press and the general public also has a First Amendment basis." Grove Fresh, 24 F.3d at 897 (citing Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 603 (1982)).

The presumption of public access stems from the fact that the public at large "pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." Citizens First Nat. Bank, 178 F.3d at 944 ("Most cases endorse a presumption of public access to discovery materials.") (citing cases). As the Seventh Circuit explained, "Judicial proceedings are public rather than private property, and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible." Union Oil Co. of California v. Leavell, 220 F.3d 562, 567 (7th Cir. 2000) ("People who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with

5

subsidized dispute resolution by public--and publicly accountable--officials").

### 2. The Burden To Demonstrate "Good Cause" Remains Firmly On The Party Promoting Secrecy, With Any Doubts To Be Resolved Against Suppression

By its terms, Rule 26 imposes on the party seeking to seal documents from public scrutiny the obligation to demonstrate "good cause" for protection. See Fed. R. Civ. P. 26(c). As the party moving to shield a category of information (C.R. Files) under a protective order, the defense thus at all times bears the burden of proof. See Jepson, Inc. v. Makita Elec. Works, Ltd., 30 F.3d 854, 858 (7th Cir. 1994). To satisfy their good cause burden, the party must point to a "clearly defined and very serious injury" caused by public disclosure (Andrew Corp v. Rossi, 180 F.R.D. 338, 341 (N.D. Ill. 1998)) and needs to make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981) (citations omitted). See also Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."). Moreover, the "difficulties inherent in quantifying the First Amendment interests at issue require that we be firmly convinced that disclosure is inappropriate before arriving at a decision limiting access." Grove Fresh, 24 F.3d at 897 (emphasis added) (citing In re Continental Illinois Secur. Litig., 732 F.2d 1302, 1313 (7th Cir. 1984)). Under Seventh Circuit precedent, any doubts about whether documents should be shielded from public view "must be resolved in favor of disclosure." Id.

### C. Once The Complainants' Names And Other Personal Information Are Redacted, The Defendants Can No Longer Sustain Their Burden To Presumptively Seal Every Last Document That Happens To Bear A "C.R." Stamp

As stated, the Defendants' proposed order requires the Court to make a presumptive finding at the outset of the case that any document located in any C.R. file is confidential. This is not an appropriate finding. Where the names of complainants have been redacted, courts have concluded that the remaining information is not confidential. E.g., Doe v. White, 2001 WL 649536, at *2 (N. D. Ill. June 8, 2001) (providing for disclosure of CR files with identifying information of complainants redacted); Escobar v. Foster, 2000 WL 631312, at *2-3 (N. D. Ill. May 16, 2000) (entering protective order under which C.R. files were non-confidential material, subject to preservation of complainants' anonymity and police officers' personal information); Sasu v. Yoshimura, 147 F.R.D. 173, 176 (N. D. Ill. 1993) (where C.R. documents with identifying information has been redacted, remainder of document should not be designated as confidential).

Once complainant names and officers' personal information is redacted, the only conceivable remaining justification for maintaining the secrecy of C.R. files is the frequently-heard mantra of officer privacy. Under the better reasoned case law, however, this interest is insufficient to justify sealing the files. For starters, the good cause inquiry requires courts to consider "whether the party benefitting from the confidentiality of the protective order is a public official." Citizens First Nat'l Bank, 178 F.3d at 944-45. As the Seventh Circuit has made clear, "[p]ublic officials are not the same as private citizens precisely because they exercise the power of the state. With this responsibility comes also the responsibility to act in the public interest."

7

In Re Witness Before Special Grand Jury 2000-2, 288 F.3d 289, 294 (7th Cir. 2002). Under this case law, police officers are public officials, paid by the taxpayers, and thus have a more limited privacy interest than might otherwise be the case. Wiggins v. Burge, 173 F.R.D. 226, 229 (N. D. Ill. 1997) ("[p]olice officers are public servants sworn to serve and protect the general public. . . [and the] manner in which such allegations are investigated is a matter of significant public interest").

At bottom, what is at issue are the files demonstrating the manner in which allegations of police abuses and corruption are investigated by the City officials charged with that task. Defendants cannot provide an example of a "clearly defined and very serious injury" caused by public disclosure (as opposed to "stereotyped and conclusory statements") that could outweigh the overriding presumption of public openness. As Judge Castillo explained in Wiggins:

> In essence, this Court concludes that the allegations of police misconduct in the disputed documents before the Court must receive public exposure in order to insure that the significant public interest is served. As Martin Luther King, Jr. stated in his now famous letter from the Birmingham County Jail in April of 1963:
>
> Like a boil that can never be cured as long as it is covered up but must be opened with all its pus-flowing ugliness to the natural medicines of air and light, injustice must likewise be exposed, with all of the tension its exposing creates, to the light of human conscience and the air of national opinion before it can be cured.
>
> [T]his Court concludes that the allegations of police misconduct contained in the disputed files must be exposed to the light of human conscience and the air of natural opinion.

Id. at 230 & 238.

Judge Lefkow weighed the same respective interests in Bond v. Utreras, 2007 WL

8

2003085 (N. D. Ill. July 2, 2007). In determining that no good cause exists to keep C.R. Files under seal, Judge Lefkow was mindful of a privacy interest on the part of the police. That said, that interest did not outweigh the public interest in openness on this subject. Bond, 2007 WL 2003085, at *3 ("The fact that the allegations of police misconduct contained in the [material] would bring unwanted negative attention on Defendants is not a basis for shielding the materials from public disclosure. The public has a significant interest in monitoring the conduct of its police officers and a right to know how allegations of misconduct are being investigated and handled."). Judge Lefkow also explained that after the personal information (such as addresses and the like) is redacted, then the seal cannot be justified over the remaining material: "That information, though personal, has a distinct public character, as it relates to the Defendant Officers' performance of their official duties. Without such information, the public would be unable to supervise the individuals and institutions it has entrusted with the extraordinary authority to arrest and detain persons against their will . . . . With so much at stake, Defendants simply cannot be permitted to operate in secrecy." Id. at 6.[2] This reasoning is sound, and should be followed by the Court.

### D. Other Courts To Consider The Same Issues Have Adopted Plaintiff's Counsel's Proposed Protective Order Rather Than The Defendants' Attempt To Presumptively Designate All C.R.'s Confidential

While acknowledging that some courts have adopted protective orders similar to those proposed by Defendants, Plaintiffs submit that the better-reasoned decisions are those courts that have adopted Plaintiffs' proposed order. For example, Judge Guzmán recently had occasion to consider the same issue presently before this Court in Petrovic v. City of Chicago, Case No. 06 C

---

[2] This case is on appeal the Seventh Circuit.

6111. Plaintiff in that case proposed a protective order, like that proposed by Plaintiffs here, in which either side can designate things reasonably believed to be confidential, subject to the other side's right to challenge. The City proposed its standard order under which C.R. files are automatically deemed confidential. After argument, Judge Guzmán selected Plaintiff's proposal, deciding that once complainant names and officers' personal information are redacted, the defense was unable to show the requisite good cause to justify sealing every file. Judge Guzmán specifically recognized that the public has a right to learn about the inner workings of the City's Police Department, given the tens of millions of public dollars that fund it. See Exhibit B at 17 (Transcript of Petrovic proceedings dated April 12, 2007); see also Exhibit C, Protective Order, Hughes v. City of Chicago, 08 C 627 (adopting a protective order similar to the one Petrovic and the one suggested here). Similarly, in response to the City's attempt last year to make C.R.s confidential, Judge Shadur concluded simply that "Complaint Register ('C.R.') files are public documents." See Exhibit D, at 5, Protective Order, Ramirez v. City of Chicago, 05 C 3317.

### E. Recent Developments Confirm That The Judges Adopting Plaintiff's Proposed Protective Order Had The Better Of The Argument

To the extent there have been other courts in this District willing in the past to accept the City's confidentiality designation, there has been a recent development that leaves little doubt about the absence of the requisite good cause. Just last year, the Chicago City Council passed an ordinance under which OPS (now called the Independent Police Review Authority (IPRA)) investigation summaries are heretofore to be treated as public documents. See Exhibit E, Sect. 2-57-100. In proposing changes to the OPS in the wake of the videotaped bar beating cases, Mayor Richard Daley was quoted as stating that the new reform "will make the investigation process

more open, transparent, accountable, and credible to the people of Chicago." See Exhibit F (Chicago Tribune, May 4, 2007, "Cop Oversight Vowed; Daley Says Outside Agency Will Restore Public Confidence," at 1-2). If the details of OPS investigations are now public (as they always should have been, in Plaintiffs' view), then the City should have a very difficult time persuading the Court that "good cause" really does exist to seal the file here.

\* \* \* \*

In sum, Plaintiffs urge the Court to adopt their version of Paragraph A(6), under which Defendants retain the right to designate documents in C.R. files as confidential, subject to Plaintiffs' right to challenge that designation. For the reasons explained above, this proposal is far superior to the Defendants' proposal that the Court to make a pre-emptive and presumptive finding that any document that happens to have a C.R. stamp on it is automatically confidential.

## II. The Party Wishing to Keep Documents Confidential Should Bear the Burden of Showing "Good Cause"

The next point of dispute concerns Paragraph C(8), the provision under which either side can seek a judicial adjudication as to whether particular documents stamped "confidential" by the opponent are truly confidential. Both sides agree that such a "challenge provision" is required by the case law, and both sides agree that the relevant standard is "good cause" under Rule 26. The disagreement is whether the burden falls on the party seeking to maintain secrecy (Plaintiffs' proposal) or on the party challenging the confidentiality designation (the Defendants' proposal).

Plaintiffs' proposal must be adopted. The Court need look no further than the plain terms of Rule 26, under which the burden to demonstrate good cause falls squarely on the party proposing secrecy. See Fed. R. Civ. P. 26(c) ("for good cause shown, the court . . . may make any

11

order which justice requires to protect a party or person. . ."). Thus, even were the Court inclined to accept Defendants' proposal to bypass the good cause burden, Plaintiffs respectfully submit that the Court does not even have the power or authority to enter such an order. Jepson, 30 F.3d at 858 (under Rule 26, the district court has the power to keep documents under a protective order "only upon a showing of 'good cause'" and "if good cause is not shown, the discovery materials in question should not receive judicial protection") (emphasis added); Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981) (party promoting continued secrecy bears the burden). For these reasons, the Court should accept Plaintiffs' proposed language at the end of Paragraph C(8) to make clear that the burden remains at all times on the party seeking to maintain documents under seal.

## III. Defendants Should Not Be Permitted Carte Blanche Access to Every Medical and Mental Health Record

It is well-established that medical records are privileged. Although Plaintiffs might, to an extent, waive this privilege when they file a lawsuit, the mere act of filing a lawsuit does not automatically permit defendants to obtain a plaintiff's entire medical history. See Neuberg v. Michael Reese Hosp., 1992 WL 477018, at *8 (N. D. Ill. Jan. 13, 1992) ("by filing a malpractice action, a patient does not implicitly consent to unlimited discovery concerning his medical condition") (citations omitted). Rather, discovery is limited and must be reasonable in scope. See Jays Foods L.L.C. v. Snyder's of Hanover, Inc., 2003 WL 22078333, at *2 (N. D. Ill. Sept. 5, 2003).

### A. There is no legitimate reason for Defendants to seek discovery of all of Plaintiffs' medical records.

Defendants contend that Ms. Watkins-Dillon might have had pre-existing injuries that would call into question the causation of her present injuries. As a compromise, and to obviate the need to take up this Court's time on the issue, Plaintiffs offered to produce medical records for Ms. Watkins-Dillon going back four (4) years prior to the incident. See Exhibit F (November 11, 2008 letter to defense counsel). In the unlikely event there is any mention in those medical records about an injury that might relate to the injuries she sustained from the officers, Defendants could seek additional records relating to those injuries, if they exist. Id.

Defendants rejected this offer. Rather, under Defendants' proposal, Defendants would have access to every single one of Ms. Watkins-Dillon's medical records. Defendants have presented no cogent theory for why they should be entitled to access every one of Ms. Watkins-Dillon's medical records. Plaintiffs have been more than reasonable in offering to permit Defendants access to medical records going back four years before the incident. That is all this Court should award.

### B. There is no legitimate reason for Defendants to seek discovery of Plaintiffs' mental health records.

Defendants assert that because Plaintiffs are claiming emotional distress, they are entitled to full mental health records. This is not the case. Manessis v. New York City Dep't of Transp., 2002 WL 31115032, at *2 (S.D.N.Y. 2002) (a claim of emotional distress is not "a license to rummage through all aspects of the plaintiff's life"); Neuberg v. Michael Reese Hosp. 1992 WL 477018, at *8 (N.D. Ill. Jan. 13, 1992) ("by [seeking emotional distress], a patient does not

13

implicitly consent to unlimited discovery concerning his medical condition"). Plaintiffs are not claiming emotional damages beyond "garden variety" emotional distress, and, as such, Defendants are not entitled to their mental health records. See Santelli v. Electro-Motive, 188 F.R.D. 306 (N. D. Ill. 1999). Of course, Plaintiffs may, during the course of discovery, learn information that could lead to them to broaden their claims for emotional distress. If that were to occur, Plaintiffs would inform Defendants immediately (and certainly well before the close of fact discovery), and Defendants would have the opportunity to discover mental health records.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully that the Court enter their proposed protective order, attached here as Exhibit A.

RESPECTFULLY SUBMITTED:

/s/ Elizabeth Mazur
Counsel for Plaintiffs

Arthur Loevy
Jon Loevy
Samantha Liskow
Elizabeth Mazur
LOEVY & LOEVY
312 N. May Street, Suite 100
Chicago, IL 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

I, Elizabeth Mazur, an attorney, certify that on December 15, 2008, I served the above PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER via the ECF electronic filing system to counsel of record.

/s/ Elizabeth Mazur